May it please the Court, my name is Daniel Blank and I represent Jesus Gonzalez-Avina, the defendant appellant in this case. Your Honors, whether through a neglect of a policy or the policy of neglect, the government delayed prosecution of my client for two years approximately after a complaint was filed, about three years after he was first encountered by an immigration agent in state prison. In 2003, an immigration agent found Mr. Gonzalez-Avina in custody and interviewed him. We get lots of cases like this where agents trawl through the state prisons and county jails and interview people who have Hispanic surnames and then try to determine whether they've been deported or not. My client confessed that he had been deported. He obviously has a prior felony conviction because he's in prison. And the complaint for criminal charges, illegal reentry after deportation, and the agent placed a detainer on my client. Because of these two things, my client was denied good time credit for the term that he was serving in prison. What in the record shows that he was denied good time credits? What in the record shows that he was denied good time credits? This was basically agreed to by the parties. What was it agreed to in the record? Can you show me some, like a stipulation from the government, you mean? Yes, Your Honor. And the court so found in terms of the sentencing later at the sentencing hearing. Found it where? I mean, cite something for me. You keep shifting ground, but you haven't given me the citation yet. I'm sorry, Your Honor. I'll do so right now. So the first citation is in page 28 of the excerpts of record. It's lines 8 through 11. And what is that? I'm sorry? And what is that? That is my proffer to the court. Well, it's a proffer. That's correct. That's all there is. Well, I requested an evidentiary hearing, but that was denied. So a proffer is all that we have. Later, the government counsel agreed that that was the case. Oh, also, I have another proffer here, Your Honor, by the defendant himself. That's on page 45 of the excerpts of record. That he was denied his good time credits. That's lines 19 through 23. Government counsel's acknowledgment that that was the case is on page 48 of the excerpts of record, lines 21 through 25, continuing on through on page 49, lines 1 and 2. And the district court's acknowledging that fact and taking it into consideration at sentencing is on page 51 of the excerpts of record, lines 15 through 19. So, he served an additional six months in custody because of this delay. What happened was the government agent found him, filed the detainer, filed a complaint, and then the government did nothing. Government counsel suggested before the district court that Mr. Gonzales-Savinas simply slipped through the cracks. And it is normally their policy to be prosecutions and complaints in cases like this. I request an evidentiary hearing on the matter, and that was denied. But if you think about it, if that were the policy to promptly rip them over, they wouldn't need a detainer. The detainer is just there so that he won't be released. This person was still looking at a lot more time on their sentence. No detainer would be necessary if that were the policy. But in any event, that's the record that comes before Your Honor. The sentencing court on the charge before us took that into account, didn't it? Yes. And the district court lowered the sentence. And said, I'm lowering the sentence by the amount of good time. Correct. But that doesn't cure the error, because the error was complete and the prejudice had been suffered pretrial, before determination. What prejudice is there besides the loss of good time? Well, that is the prejudice. Oppressive incarceration is one of the three types of prejudice that are recognized for Speedy Trial Clause violations. But you said he was given credit for that. That's correct. But the Speedy Trial Clause protects the guilty as well as the innocent. You can't say... No, he's given credit. What is the prejudice? He was not guilty at the time the court denied this motion. So there was no presumption that he was going to be found guilty. And then later... I don't understand that. Okay. He was not guilty. The court determined the motion is a pretrial motion. So the court can't say, well, I'm going to presume that you're guilty, and I will take care of you in sentencing. I think that's what Your Honor is asking. You have to rule on the motion that's before you. The prejudice was complete. What's the prejudice? The prejudice is six extra months in state custody. That's how it was presented to the district court. It was a pretrial motion. But he's got six extra months, and as Judge Hawkins' question established, he was given credit for that six months. That's correct. But what if my client had been found not guilty? What was the remedy then? You can't say, well, you're presumptively guilty, so we'll take care of you in sentencing. If he hadn't done the crime, he wouldn't be here. That's the supposition we don't have, right? Indeed. That's correct. Because the Constitution protects the guilty as well as the innocent. No, but there's six months off of federal time. That's correct. Are you saying he's been prejudiced because state prison is worse than federal prison? Well, that may be, but my initial point is that he filed this motion pretrial. So you're saying, well, his subsequent sentence for a conviction that he had not yet obtained Well, in that case, there would be a prejudice in every case, wouldn't there? Because everybody's presumed to be innocent. Not if they ridded him over properly. No, no, no. In every case where there's a delay, there would be prejudice. There would be no need to show prejudice because there would be prejudice in every case. If we follow your supposition that, well, he should be presumed innocent. No, Your Honor, that's true. Where they should be presumed guilty? Of course no one should be presumed guilty. What's a prejudice? Well, I'll explain, Your Honor. So the way speedy trial clause cases work, you can't look at the record or how someone was found guilty later to determine whether there was harmless error. The harmless error is built into the prejudice analysis. So, for example, many speedy trial cases come to us because people have lost evidence. There's a delay and people die or evidence is lost. So if you looked at the record and said, well, the evidence of guilt was overwhelming at trial. Therefore, there's no prejudice. That doesn't really work because the whole delay is what caused him to lose the evidence in the first place. So you can't parse it out the way Your Honor, I think, is trying to do so. Could he have entered a conditional plea? Could he have entered a conditional plea? Yes, if one had been offered, if one had been available to him to do that. You know, the government has to consent to a conditional plea. Was there a request for a conditional plea? I don't recall if there was in this case. There's been some sort of shifting policies about this. And we're not getting these conditional pleas anymore. But we're not. No, pardon me. Did the defendant request to make a conditional plea? I don't recall. I'm sorry, Your Honor. I don't recall in this case. It is my general practice to do so. But of late, the government has not been consenting to them. So I don't know if that occurred in this case. Well, I don't want to be repetitious, but just so I understand your argument, just tell me again, succinctly, what the prejudice was in this case by the, assuming there was a denial of his right to speedy trial. What's the prejudice? There were six months in state custody that he had to serve that he would not have served otherwise. And this is highlighted by the fact, if Your Honor would imagine, that rather than being found guilty at trial in federal court, he was found not guilty. Then there would have been six extra months. And that's how the posture of the motion was before the district court. He was pretrial. That was the problem. Now, if he had been brought over promptly, he could have sought bail. There were other things that would have been available to him. If they had filed an indictment or information rather than merely a complaint, he could have sought relief under the Interstate Agreement Undetainers Act. None of these options were available to him. It all goes to whether there was a delay, and I don't think the government is contesting that there was, right? We'll see. They didn't below. You have about a minute and a half. Do you want to save it for a bubble? Thank you for your argument. We'll hear from the United States at this time. Good morning. Good morning. May it please the Court, Hartley West for the United States. This Court should uphold the denial of defendant's motion to dismiss for two independent reasons. First, as a factual matter, as the Court suggested, the defendant did not demonstrate that he suffered actual prejudice by, in fact, losing good time credit. Nor did he demonstrate that there was any prejudice that was a result of a delay in going to trial. And, in fact, he actually agreed that the Court could avoid actual prejudice by taking lost good time credit into account at sentencing. Second, as a matter of law, the Supreme Court has held that the Sixth Amendment Speedy Trial Clause right is not implicated until indictment, information, or arrest. And here, because the defendant went to trial three months after he was arrested and indicted, there was no speedy trial violation. Why should the government proceed in the way it did? As a practice, the government, if somebody is serving their state time, there is an immigration detainer that is filed and often a complaint, sometimes also just an indictment. Why isn't a detainer enough? I'm sorry? Why isn't a detainer enough? Why isn't it sufficient to hold the person serving the state sentence until they're ready to be transferred over to federal custody? Well, I think that it probably would be. Ordinarily, the government's practice is when somebody is simply serving their state sentence to writ them over upon a complaint. Obviously, there was a delay here in this case. But the defense is incorrect that the government conceded that there was any prejudice that the defendant, in fact, lost good time credit. I didn't hear them argue that. What I heard them argue was that the government below conceded that he had lost good time credit while serving the state sentence. That's correct. That's what you said, isn't it? I'm sorry. That is what I meant to say as well, Your Honor. But that is not true. You don't concede that he lost good time? No. And, in fact, that was not conceded below either. If you look at the record cites that the defense just cited the court to, that was Excerptor Record 48. And if you look at that, what the government is actually saying is that she says, I do not know whether or not that was due to the federal detainer. That was at the sentencing hearing. And at the hearing on the motion to dismiss, the government said if the defense is correct that he had to do straight time on his prison sentence because of an immigration detainer, then I feel that in the interest of fairness, he should be given time to run concurrent or some time off because of what he did in the state. That goes to the prejudice element, right? That's correct. All right. What about his other argument about prejudice, aside from the good time credit? The concurrent time issue? That was not pursued on appeal. No, I mean the argument he made about, well, you know, he should be presumed to be, I think it's almost like a presumption of innocence argument, I think. I do understand his argument, but, in fact, that is not what he said below. If the court looks at Government Excerptor Record page 19, which is the last page of the motion to dismiss hearing, the court says, some credit for some overlap when they should have brought him over would be taken into consideration and deducted from the sentence. And the defense says, if we get to actual prejudice, I think it's within the court's, I think the court can handle it that way. We're left with the issue of presumptive prejudice. Back to the good time credit issue. Is the defense correct that they asked for an evidentiary hearing? They did request an evidentiary hearing. However, their failure to produce evidence of loss of good time credit was not precluded by the court's denial of an evidentiary hearing. That's something that the defendant could have put evidence in without testimony. How? Well, it's not in the record, but on my own, I contacted CDC and tried to find out about the good time credit process. And they stated that with the defendant's consent, they could release information about requests for good time credit. And if it was denied, the basis for that denial, they could not produce that to us. You're talking about through official records of the CDC? That's correct. They said they do keep such records. Did the government object to an evidentiary hearing? I don't specifically recall. I know that the district court did find that there was no reason to have one here. But the government's position was there was no proof of loss of good time? Well, that's the government's... We start with a yes or no to that question? Yes. Well, the government did not specifically take a position on that. The issue that was actually raised at the district... You told us at the beginning of argument that it was not established that there was loss of good time. Correct. And you point to the record and say this was just a proffer by the defense. Correct. Isn't the sum and substance of that that it was the government's position that the defendant had not established a loss of good time credit? That is the government's position. But when the defense asked for an opportunity to establish that, you don't recall if the government objected? They did not ask for an opportunity to establish that. Their request was... Their issue below was for concurrent time. This was a side matter that was raised. Their request for an evidentiary hearing went to the issue of concurrent time. Okay. Did you... Were you the attorney below? I was not. Now, in addition, the court found... The court did not find that, in fact, the defendant had proved loss of good time credit,  The court asked the probation officer how it could be determined how much good time credit might have been lost, and the probation officer stated, It's really hard to predict. There is really no way to tell. At excerpt of Record 46, the court stated, This is all speculation on everyone's part. In the end, when the court did subtract six months from the sentence, the court stated, That will give you some credit for the six months that you may have been cheated out of, so to speak. There was no factual finding here. How do you think... As you note in your brief, the law in our circuit is not settled as to when you start counting the time for purposes of the Sixth Amendment delay, right? Yes. How do you think that should be resolved? I think the court should resolve it in accordance with the favors decision and in accordance with the Supreme Court, Marion, Loud Hawk, and others. In 1971, the Supreme Court settled this issue when it said, Quote, Either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge engage the particular protections of the speedy trial provision of the Sixth Amendment. Now, we suggest that the court meant what it said. There are a couple of lines, two lines of cases in this circuit following the Marion decision. One is the favors case, and that was decided approximately one year after Marion. In favors, this court analyzed Marion in detail and it noted that the complaint does not serve the same function as an indictment or information. An indictment or information can allow a prosecution. A complaint can simply allow an arrest. It cannot allow a trial. So in that detailed analysis, the court concluded in specifically confronting the issue as to whether a complaint triggered Sixth Amendment speedy trial protections that it did not. Now, Tarrick was decided a few years later. Tarrick addressed Marion in passing and only for the citation that attachment of the Sixth Amendment right happens when a defendant is, quote, accused. Other than that, Tarrick relied solely on Northern, which was decided about one month, I believe, after Marion, but did not even mention it. Benson, which predated Marion and actually stands for or supports the government's position. And Venus, which did not actually address the issue of a complaint at all. There, the defendant proceeded by indictment. So even under the principle that the first panel decision should control, the first panel decision that postdated Marion and actually addressed the issue supports the government here and held that Sixth Amendment speedy trial right does not attach at complaint. So as a matter of law, here, the defendant proceeded to trial three months after his arrest and indictment. And the court need not even reach the factual issue if it doesn't wish to. It can resolve this matter for the Ninth Circuit. Okay. If you have nothing more, thank you for your argument. Thank you. You have about a minute and a half for rebuttal, counsel. Thank you, Your Honor. Just briefly, the Marion decision never said that the Speedy Trial Clause rights do not attach with a complaint. What the government's arguing is something by absence. But in fact, the Marion decision cites to two cases by this court. The Benson case and the Venus case. They're cited with approval. And what those cases say is that it does start with a complaint. And in fact, Benson and Venus are the cases that Northern relied upon when they said, when this court said that you have consistently held that a Speedy Trial Clause action begins with a complaint. So both before and after the Marion decision, this court has said that a complaint starts the Speedy Trial Clause right and the Marion decision does not say otherwise. In fact, the cases that Marion cites are the opposite. And the favors decision itself was distinguished in Tarrick with a but C.F. cite. I have to say, I've never seen a but C.F. cite before. But it is there and it's acknowledged. It began with a complaint. So the Sixth Amendment case was ripe and Mr. Gonzales-Savina suffered prejudice on account of it. If there are no other questions, I will submit. I don't see any. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted for decision.
judges: Hawkins, Tashima, Bea